848 F.2d 184
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellant,
v.
Frank E. BALDWIN, Jr.; Van Lott Inc., Defendants-Appellees,
and
Bankers Trust of South Carolina; the Travelers Indemnity
Company; First Federal Savings and Loan Association of
Walterboro; Boyle-Vaughan Agency, Incorporated; Citizens &
Southern National Bank of South Carolina; Wes Frame
Incorporated; First National Bank of Orangeburg, Defendants.
 No. 87-3143.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 7, 1988.
Decided: May 20, 1988.
 
 John Randolph Pelzer (Dennis J. Christensen; Pelzer & Associates, P.A.; John Francis Elmore; Federal Deposit Insurance Corporation, on brief), for appellant.
 W. DuVall Spruill (Turner, Padget, Graham & Laney, P.A.; R. Thayer Rivers, Jr., on brief), for appellees.
 Before SPROUSE and WILKINS, Circuit Judges, and W. EARL BRITT, Chief, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 The Federal Deposit Insurance Corporation (FDIC) appeals the district court's judgment in its foreclosure action, challenging the court's damage calculation. FDIC contends the district court erred in awarding interest only on the unpaid principal of the note rather than on the sum of the unpaid principal and the interest already accrued at the time it initiated the foreclosure action. FDIC also challenges the district court's refusal to award attorney fees FDIC expended in its efforts to defeat various reorganization plans filed by the bankrupt debtor. We find no error in the district court's interest calculation. The district court's refusal to award attorney fees incurred by FDIC during its efforts in the bankruptcy proceedings was erroneous, however, and we reverse this aspect of its decision.
 
 
 2
 Frank E. Baldwin, Jr., the note obligor and defendant in the foreclosure action, executed a promissory note to a South Carolina bank in the principal amount of $174,100 in 1974.[1] FDIC received the note and the mortgage securing it through an assignment in 1974. On February 3, 1982, FDIC filed a complaint to foreclose on the mortgage. At that time the principal amount of indebtedness on the note amounted to $127,999.05. Defendant Van Lott, a junior lien holder on the mortgage, was named a party to the action.
 
 
 3
 Baldwin filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on February 22, 1982, and the foreclosure action was stayed pursuant to 11 U.S.C. Sec. 362. Over the next four years, Baldwin submitted three plans of reorganization. Each plan would have resulted in the destruction of FDIC's mortgage on some of the mortgaged property. FDIC opposed each plan under 11 U.S.C. Sec. 1129(b)(2)(A)(iii) on the ground that they each failed to provide it the indubitable equivalent of its secured claim.[2] The district court consequently lifted the stay of the foreclosure action in response to FDIC's motion in June 1986.
 
 
 4
 At the foreclosure trial's conclusion, the court awarded judgment to FDIC in the amount of $127,999.05 in principal, $76,378.01 in simple interest accrued as of the time of the filing of the foreclosure complaint in 1982, and $78,942.08 in simple interest on principal from the time of the filing of the complaint to the date of the judgment on the foreclosure action in January 1987. The court rejected FDIC's claim for over $50,000 in attorney fees stemming from its resistance to Baldwin's reorganization proposals. The court limited FDIC to $5,000 for fees incurred in the foreclosure action alone.
 
 A. FDIC's Claim for Capitalized Interest
 
 5
 FDIC contends that the court erred in its calculation of interest as part of the judgment. It argues that upon its commencement of foreclosure in 1982, the twelve percent interest rate specified in the note[3] should have begun to run against the capitalized total of principal and interest then due, rather than against the principal alone, as the court decided.
 
 
 6
 The district court computed the interest due after the foreclosure filing as twelve percent simple interest against the principal, a daily rate of $42.08. FDIC seeks a daily rate of $69.02, equivalent to twelve percent interest on the capitalized total of interest and principal as of the date foreclosure commenced.
 
 
 7
 In a post-trial motion and on appeal, FDIC has urged that collateral estoppel mandates a finding that it is entitled to a capitalization of its interest and the attendant $69.02 daily rate. FDIC bases its collateral estoppel argument on a bankruptcy court holding that FDIC should receive capitalized interest under the terms of the note. The bankruptcy court, in rejecting Baldwin's third proposed reorganization, held that FDIC deserved capitalized interest and that this made Baldwin's reorganization plan inadequate to satisfy the secured interest of FDIC.
 
 
 8
 We agree with the district court that the bankruptcy proceedings, to which Van Lott was not a party, did not collaterally estop Van Lott from contesting the amount of interest to be awarded senior lien holder FDIC in the foreclosure proceedings. At a minimum, Van Lott lacked a " 'full and fair opportunity to litigate the relevant issue effectively in the prior action." ' Watkins v. M. & M. Tank Lines, Inc., 694 F.2d 309, 311 (4th Cir.1982) (quoting Graham v. State Farm Fire and Casualty Insurance Co., 287 S.E.2d 495, 496 (S.C.1982)); Williams v. Atlantic Coast Line R.R., 274 F.Supp. 216, 219-220 (D.S.C.1967).
 
 
 9
 We also affirm the district court's holding on the merits of FDIC's claim that interest should be capitalized. The district court held that this claim had been waived. Neither in its original complaint filed in 1982, nor in its amended complaint in 1986, nor in its pretrial brief did FDIC seek capitalization of interest. In its communications with Van Lott, FDIC represented that it was seeking per diem interest of $42.08. Only in the course of the bench trial itself did FDIC inform Van Lott and argue to the district court that it sought $69.02 in daily interest.
 
 
 10
 The district court's factual findings are not clearly erroneous. See generally Insurance Co. of North America v. Northwestern National Insurance Co., 494 F.2d 1192, 1195 (6th Cir.1974) (district court finding that party had not waived right to submit additional proof due to stipulation reviewed for clear error). It found Van Lott would be unduly prejudiced by allowing FDIC to change its position in mid-trial and therefore held FDIC had waived any claim to capitalized interest. We cannot say this decision was an abuse of the district court's discretion. See Atlantic Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 717 (4th Cir.), cert. denied, 464 U.S. 848 (1983) (court's decision under Rule 54(c) not to grant relief to which a party was entitled because of the party's failure to request such relief reviewed for abuse of discretion).
 
 B. FDIC's Claim for Attorney Fees
 
 11
 We think, however, the district court erred in concluding that FDIC was entitled to attorney fees only for legal services incurred during the foreclosure proceeding. Baldwin's note on which the foreclosure action was based contains the following language:
 
 
 12
 If this note be placed in the hands of an attorney for collection after the same shall for any reason become due, or if collected by legal proceedings or through the probate or bankrupt courts, or under foreclosure proceedings under the mortgage securing this note, then all costs of collection, including a reasonable attorney's fee, shall be added hereto and secured and collectible as the principal hereof.
 
 
 13
 (emphasis added).
 
 
 14
 We agree with FDIC that its participation in Baldwin's bankruptcy proceeding was in defense of its interest in collecting on the note and that the terms of the note contemplated attorney fees for all efforts to collect on the note. The district court declined to award attorney fees FDIC expended in the bankruptcy action, stating that "the bankruptcy proceedings culminated in nothing," and held that the note was "collected" only in the foreclosure suit. FDIC's many actions undertaken during the four year pendency of the bankruptcy proceedings, however, were necessary to prevent Baldwin from achieving a reorganization plan that would allow him to pay FDIC less than the full value of the note. FDIC moved in 1983 to have the stay in bankruptcy lifted, a necessary step for the collection of the debt through a foreclosure action. That motion was denied, and three plans of reorganization were later pursued by the debtor. Each of those plans provided that FDIC would lose its mortgages on certain parcels of property that were the security for the note. Thus, to preserve its security, FDIC was required to resist these reorganization plans.
 
 
 15
 These efforts, which succeeded in preserving the collateral for the note, were necessary to enable FDIC to collect fully. The fees for these legal actions fall within the note's provisions allowing the note holder "all costs of collection" for "legal proceedings." The attorney fees portion of the district court's judgment is reversed and remanded for reconsideration in light of these views.
 
 
 16
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 To secure his indebtedness on this note, Baldwin executed in 1974 a mortgage covering four tracts of land, which were the subject of the foreclosure action below
 
 
 [2]
 FDIC's efforts in the bankruptcy proceedings included appeals to the district court and its present appeal includes claims for fees incurred in those appeals
 
 
 [3]
 The relevant language of the Baldwin note reads:
 [T]he undersigned promise(s) to pay ... one hundred seventy four thousand one hundred & No/100 plus intrest [sic] Dollars payable ... with interest from date until paid at the rate of 12 F/D per centum per annum. Said principle and finance charge to be paid as follows:
 
 
 [365]
 days--7-5-75
 ... After maturity either as originally provided or as accelerated under the terms hereof, all sums due hereunder shall bear interest at the maximum legal rate.